IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:19cr61-MHT |
| | ) | (WO) |
| CHRISTOPHER MICHAEL CONWAY | ) | |

OPINION

Defendant Christopher Michael Conway pled guilty to Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) & (2). The Assistant United States Attorney and the United States Probation Officer urged the application of a four-level enhancement to his sentence, pursuant to United States Sentencing Guidelines § 2K2.1(b)(6)(B). Conway objected and, in addition, sought a downward variance from his calculated custody range.

The court overruled Conway's objection and applied the enhancement, which yielded a recommended custody range of 77 to 96 months. The court then granted a downward variance, resulting in a sentence of 50 months of incarceration, to account for two factors: (1) the

inappropriate harshness of the four-level enhancement, which is unfairly severe given Conway's underlying behavior, and (2) his lifelong and well-documented struggles with substance abuse. Although the court provided its reasons for the variance at the sentencing hearing, this opinion sets forth the court's rationale in further detail.

## I. FACTUAL BACKGROUND

In early January 2018, officers conducted a search of Thomas Grier's residence. They located, among other items, a Harrington and Richardson 158 shotgun. Grier, who was arrested at the time, reportedly told investigators that Conway, the defendant in the instant case, brought the item to the residence.

Later in January, Conway, Grier, and a third individual were arrested. Conway later admitted that he traded methamphetamine for the shotgun. He says he served as a broker, facilitating the exchange for a

small fee. He then took the shotgun to Grier (who also has a prior felony conviction), apparently hoping that Grier could re-sell the firearm at a higher price. The shotgun was allegedly manufactured before 1968 and, according to Conway, was kept without ammunition inside a case. Put simply, it served as barter in a trade but was not used in any threatened or actual violence.

After Conway pled guilty, he came before the court for sentencing.

## II. DISCUSSION

### A. Guideline 2K2.1(b)(6)(B) Sentencing Enhancement

#### 1. Legal Standard

A sentencing court has considerable discretion in determining an appropriate sentence, but the sentence must be reasonable. *See, e.g.*, *United States v. Irey*, 612 F.3d 1160, 1188-89 (11th Cir. 2010). In determining a defendant's sentence, courts must

consider the recommended sentence under the Sentencing Guidelines and any relevant policy statements. *See* 18 U.S.C. § 3553(a); *see also United States v. Booker*, 543 U.S. 220, 259-60 (2005).

But the Guidelines are only "one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). In determining a sentence, courts are also required to consider the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; the need to afford adequate deterrence and protect the public from further crimes of the defendant; the need to provide, in the most effective manner, needed educational or vocational training, medical care, or other correctional treatment to the defendant; the need to avoid unwarranted sentence

4

disparities among defendants with similar records who have been found guilty of similar conduct; the need to provide restitution to any victims; and the kinds of sentences available. *See* 18 U.S.C. § 3553(a). While Guidelines sentences generally should approximate these § 3553(a) factors, a trial court may, in the course of an individual sentencing, determine that "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply" or that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007).

## 2. Applicability of Guideline 2K2.1(b)(6)(B) to Conway

In calculating Conway's recommended Guidelines range, the United States Probation Office took the position that Conway should receive a four-level enhancement pursuant to Guideline 2K2.1(b)(6)(B). Under this guideline, a four-level sentencing

enhancement is appropriate if the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." United States Sentencing Commission, *Guidelines Manual* § 2K2.1(b)(6)(B) (Nov. 2018) ("U.S.S.G."). This enhancement may be applied "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A).

At its core, the enhancement is based on the common-sense link between firearms and violence: "In general, if a gun emboldens or has the potential to embolden the defendant, or if the defendant uses or could use the gun to protect ... drugs, the enhancement is more likely to be appropriate." *United States v. Gibbs*, 753 F. App'x 771, 775 (11th Cir. 2018)

(unpublished).  A typical application of the enhancement might involve, for instance, a defendant firing a gun in connection with aggravated assault, *see United States v. Pettie*, 25 F. Supp. 3d 1369, 1370 (M.D. Ala. 2014) (Fuller, J.); attempting to retrieve a firearm from one's pocket during an assault, *see United States v. Jackson*, 276 F.3d 1231, 1235 (11th Cir. 2001); or using a gun during an armed robbery, *see United States v. Ray*, 719 F. App'x 919, 923 (11th Cir. 2017) (unpublished).  In the Guidelines themselves, both examples of subpart (b)(6)(B) applications involve utilizing a firearm in connection with a robbery. *See* U.S.S.G. § 2K2.1, cmt. n.14(E).  In such cases, the firearm's use might contribute to heightened danger or embolden a defendant to commit a crime, particularly if "defendants would have, if necessary, used their firearms in furtherance of their crimes." *Jackson*, 276 F.3d at 1234.  As the Eighth Circuit Court of Appeals noted, the enhancement serves to "account[] for the

increased risk of violence when those committing felonies possess firearms." *United States v. Davis*, 360 F.3d 901, 903 (8th Cir. 2004).

But this type of application is not exclusive. Rather, the phrase "in connection with" has been given "an expansive interpretation." *United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) (describing the predecessor to Guideline 2K2.1(b)(6)(B)); *see also United States v. Reyes*, 668 F. App'x 858 (11th Cir. 2016) (unpublished). This interpretation includes the sale of a firearm if the sale is itself, or facilitates, another felony offense. *See United States v. Carillo-Ayala*, 713 F.3d 82, 96 (11th Cir. 2013) ("Sale of a firearm in exchange for drugs facilitates a drug offense."). To trigger the relevant enhancement, a firearm need not be "operable," *United States v. Ray*, 719 F. App'x 919, 924 (11th Cir. 2017) (unpublished), or "loaded," *Rhind*, 289 F.3d at 695 (describing the predecessor to Guideline 2K2.1(b)(6)(B)), or even

8

assembled, see *id*. It need not be used. *See United States v. Crockett*, 519 F. App'x 600, 602 (11th Cir. 2013) (unpublished) ("We have never held that the application of the § 2K2.1(b)(6)(B) enhancement is appropriate only when a defendant uses a firearm to embolden or protect himself."). It need not contribute, in the usual way, to danger, violence, or a threat thereof.

Here, the evidence indicates that Conway sought to use the gun to barter, as an item of value. The firearm was "in a case and unloaded"; Conway traded methamphetamine for the old shotgun, reportedly on behalf of a friend, in search of a broker's fee and an arbitrage opportunity. Conway Sentencing Memorandum (doc. no. 57) at 7-8; *see also* Conway Exhibit 2 at 46:10-13 ("[I]f you get something for 20 bucks, [and] you're making 60 bucks off of it, then you double your money."). Evidence presented at the sentencing hearing indicated no contemplation of violence.

Still, given the broad interpretation of Guideline 2K2.1(b)(6)(B), Conway's possession and use of the firearm, "in connection with" another felony, triggers the enhancement. U.S.S.G. § 2K2.1(b)(6)(b). The firearm was inextricably tied to, and indeed "facilitated," the possession and distribution of methamphetamine. *See id.* § 2K2.1, cmt. n.14(A); *United States v. Truitt*, 696 F. App'x 391, 394 (11th Cir. 2017) (unpublished) ("[W]e previously held that the sale of a firearm in exchange for drugs facilitates a drug offense and is therefore seen as 'in connection with' that offense under U.S.S.G. § 2K2.1.") (citing *Carillo-Ayala*, 713 F.3d at 96). Both the possession of methamphetamine and the distribution of a controlled substance are felonies under Alabama law. 1975 Ala. Crim. Code §§ 13A-12-212, 13A-12-211(b).* As such, the

---

* The United States Probation Office posited a number of other possible predicate felony offenses. The court did not consider or address the other possible predicates raised.

Guidelines recommend a four-level enhancement, even though Conway's actions appear distant from any threat of violence.

But while the Guideline 2K2.1(b)(6)(B) enhancement does apply, it is a blunt and unwieldy tool. It unfairly groups Conway with defendants who threaten or carry out violence using a firearm. It yields an identical four-level enhancement for defendants whose underlying actions differ dramatically. And it thus is inconsistent with § 3553(a), prizing uniformity over individualized consideration of the circumstances of the offense and the defendant's history, characteristics, and behavior.

In such circumstances, "an outside the guideline sentence may not be optional; it may well be essential to prevent both unwarranted disparity *and unwarranted uniformity.*" *United States v. Whigham*, 754 F. Supp. 2d 239, 252 (D. Mass. 2010) (Gertner, J.) (emphasis added); *see also Pepper v. United States*, 562 U.S. 476,

510 (2011) (Breyer, J., concurring in part and concurring in the judgment) ("Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences."). To avoid such unwarranted uniformity, then, the court used a variance to calibrate the size of the enhancement according to the actual increase in dangerousness, risk of violence, and daring--the harms purportedly combatted by the enhancement--caused by the defendant's firearm possession. Based on Conway's actual behavior (using the gun, unloaded, to barter) and the circumstances of the offense, the court varied downward by three levels, effectively applying a one-level, rather four-level, enhancement. The offense level thereby decreased from 21 (with the full four-level enhancement) to 18, resulting in a recommended range of incarceration of 57 to 71 months.

## B. Mental-Health and Substance-Abuse Issues

In light of Conway's extensive substance-abuse problems, the court imposed an additional downward variance, paired with a requirement that Conway's supervised release begin with a six-month stay in inpatient treatment (or, if he does not qualify, at a halfway house).

Conway came before the court with an extensive and well-documented history of substance-abuse and mental-health issues. Among other things, he was given alcohol at a young age, began using marijuana at age 10, and began using cocaine at age 11. *See* Conway Sentencing Memorandum (doc. no. 57) at 1. He reported an attempted suicide. *See* Presentence Investigation Report (doc. no. 65) at 14. In 2017, he began using crystal methamphetamine "heavily," paired with other illicit substances; a recent assessment confirms a severe substance-abuse disorder. *Id.* at 15.

Shortly before his arrest for the instant offense, Conway--apparently recognizing the wreckage that drug addiction leaves behind--had finally taken steps to quit.

As this court has noted, where "crime is fueled by addiction," "treating the addiction is a more effective way to halt the criminal activity than harshly punishing the crime without regard to its broader context." *United States v. Hicks*, 985 F. Supp. 2d 1307, 1311 (M.D. Ala. 2013) (Thompson, J.). Here, therefore, the court varied downwards in recognition that "[a] slightly shorter sentence in this case, followed by treatment ... is more likely to prevent [the defendant] from committing further crimes and thus better serve the public interest in safety." *Id*. With the additional variance, Conway's time in federal custody was reduced to 50 months.

DONE, this the 23rd day of December, 2019.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**